United States District Court
Southern District of Texas
**ENTERED**
July 14, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| David Allen Snoe, | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-19-1173 |
| | § | |
| Andrew Saul, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
|    *Defendant*. | § | |

# MEMORANDUM AND RECOMMENDATION

Plaintiff David Allen Snoe appeals the Social Security Administration Commissioner's final decision denying his application for social security benefits. (D.E. 1.) This case was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). Pending before the court are Plaintiff's Motion for Summary Judgment (D.E. 16) and Defendant's Motion for Summary Judgment. (D.E. 17.) Having considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

1. **Procedural Posture**

David Allen Snoe applied for supplemental security income (SSI) on February 18, 2017. (Tr. 62.) Snoe claimed that he became disabled on

February 17, 2017, due to pain, headaches, glaucoma in both eyes, and blindness in his left eye. (Tr. 62–63.) Snoe was born in 1994. (Tr. 62.)

The Social Security Administration denied Snoe's disability application on May 1, 2017. (Tr. 92.) Snoe requested reconsideration on June 7, 2017. (Tr. 100.) His request was denied on July 21, 2017. (Tr. 103.) Snoe requested a hearing. (Tr. 110.)

Administrative Law Judge (ALJ) William Sharp held a hearing on June 19, 2018, in Houston, Texas. (Tr. 31–61.) The ALJ issued a decision on September 18, 2018, finding that Snoe was not disabled. (Tr. 10–26.) The Appeals Council denied Snoe's request for review on January 11, 2019. (Tr. 1.) Snoe filed his complaint in federal court on March 25, 2019, to appeal the ALJ's decision. (D.E. 1.)

## 2. Legal Standards

### A. Five–Step Process

The Social Security Act provides SSI benefits to people who are blind or disabled with income and resources below the statutory limits set forth in 42 U.S.C. § 1382(a). *See* 42 U.S.C. § 1381; *see also Robinson v. Barnhart*, 248 F. Supp. 2d 607, 612 (S.D. Tex. 2003) ("Eligibility for SSI is based upon proof of *indigence* and *disability*.") (emphasis in original) (internal citation omitted). An individual is considered disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "The law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. 20 C.F.R. § 416.920(a)(4) (2017). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 416.920(b) (2017). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ determines whether any of the claimant's impairments are severe. 20 C.F.R. § 416.920(c) (2017). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.

3

1985). A person who does not have a severe impairment is not disabled. *Wren*, 925 F.2d at 125.

The ALJ next determines, at step three, if the claimant's severe impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 416.920(d) (2017); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (2017) (Listing). If all the criteria of a Listing are met, the claimant is considered disabled. 20 C.F.R. § 416.920(d) (2017).

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 416.920(e) (2017). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (quoting 20 C.F.R. § 404.1545(a)(1)).

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform past work, the claimant is not disabled. 20 C.F.R. § 416.920(f) (2017). If not, the ALJ proceeds to step five. 20 C.F.R. § 416.920(g)(1) (2017).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education,

and past work experience. *Perez*, 415 F.3d at 462. If the claimant can perform other work available in the national economy, the claimant is not disabled. *Id.* at 461.

### B. Substantial Evidence Standard of Review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court must examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. Hearing

At the hearing on June 19, 2018, the ALJ heard testimony from Snoe and a vocational expert (VE). (Tr. 31–61.) Snoe testified about his living situation, his childhood, and his medical problems. (Tr. 35–37, 40–51.) He testified that during his childhood he faced problems at home and that he "dropped out of school in the tenth grade." (Tr. 41–43.) Snoe testified that he performed some sporadic work "under the table." (Tr. 37.) He lost vision in his left eye at the age of three and testified that this injury continued to cause him pain, headaches, and light sensitivity. (Tr. 43–48.) Snoe also testified that he had not been to a doctor since August of 2017

5

and that "[he did not] see how getting treatment would help [him] out at this point." (Tr. 48.)

The ALJ informed the VE that Snoe had no past relevant work history. (Tr. 52.) The VE testified that a hypothetical person with the same educational background, work experience, and age as Snoe, limited to occasional work in brighter-than office or industrial lighting and frequent work in direct sunlight, could perform work as a hospital cleaner, a laundry worker, or a shipping-receiving weigher. (Tr. 52–54.) He testified that none of these jobs presented ordinary work hazards that would require left-eye depth perception or peripheral vision. (Tr. 58–59.) The VE's testimony was consistent with the Dictionary of Occupational Titles (DOT) and included the availability of these positions at both the local and national levels. (Tr. 53–54.)

Snoe's counsel sought to introduce Snoe's grandmother as a witness. (Tr. 38.) According to counsel, she was prepared to testify about Snoe's childhood in support of his alleged post-traumatic stress disorder. (Tr. 38–40.) The ALJ denied the request but allowed Snoe's grandmother to submit a written statement, which the ALJ considered in his disability decision. (Tr. 24, 40.) Snoe's counsel also asked the ALJ to order a psychiatric consultative examination to determine if Snoe met the Listing for "post-traumatic stress" or "depressive" disorder. (Tr. 40.)

The ALJ issued his decision on September 18, 2018, finding that Snoe was not disabled. (Tr. 26.) In his decision, the ALJ denied the request for a psychiatric consultative examination, noting that the only time Snoe pursued mental health treatment as an adult was in 2017 when he sought "a psychological eval[uation] for [his] disability lawyer." (Tr. 12, 562.) The ALJ determined that, outside of that one instance, the record lacked evidence of psychiatric complaints or findings. (Tr. 12.) The ALJ thus deemed the requested examination to be unwarranted. *Id.*

### 4. Analysis of the ALJ's Decision

#### A. Step One

At step one, the ALJ correctly found that Snoe had not engaged in substantial gainful activity since he applied for disability on February 18, 2017. (Tr. 14.)

#### B. Step Two

At step two, the ALJ found these severe impairments: legal blindness in Snoe's left eye, glaucoma with eye pain and headaches, depressive disorder, anxiety disorder, and provisional diagnosis of post-traumatic stress disorder. (Tr. 15.) The ALJ also determined that bipolar disorder, attention deficit hyperactivity disorder (ADHD), and substance abuse were not severe impairments. (Tr. 15–16.) Finally, he found no evidence to support finding borderline intellectual functioning to be a medically determinable impairment. (Tr. 16.)

As to the non-severe impairments, the ALJ based his findings on a lack of supporting medical evidence. While Snoe reported being diagnosed with bipolar

7

disorder and ADHD in elementary school, the ALJ noted that "treatment records during the current alleged period of disability showed no subjective complaints or objective clinical findings that showed [Snoe] continued to have bipolar disorder or ADHD." (Tr. 16, 452.) In addition, Snoe's substance abuse claims were not related to any functional limitations. (Tr. 15–16.) An impairment is "severe" only if it is "expected to interfere with the individual's ability to work." *Stone*, 752 F.2d at 1101. Snoe provided no medical or objective evidence that these impairments interfered with his ability to work. Thus, the ALJ found these impairments to be non-severe.

The ALJ did not find sufficient clinical evidence to establish borderline intellectual functioning as a medically determinable impairment. (Tr. 16.) Support for this impairment included an intelligence test that Snoe took in 2004 at age ten. (Tr. 16, 352–55, 361.) "An ALJ may make factual determinations on the validity of I.Q. tests." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ determined that the 2004 intelligence test was not a clear, "valid indicator[] of [Snoe's] intellectual functioning" in 2017 because it did not appear Snoe was cooperative during the test. (Tr. 16, 324.) The ALJ found no current clinical evidence to support Snoe's claim. (Tr. 16.) The court notes that the ALJ had an opportunity to observe Snoe's intellectual abilities during the hearing. The ALJ did not characterize borderline intellectual functioning as a medically determinable impairment. *Id.*

8

The court's independent review of the record shows that substantial evidence supports the ALJ's findings. Moreover, the ALJ considered and accounted for all of Snoe's impairments, both severe and non-severe, in formulating the RFC. (Tr. 16, 23.) Therefore, any errors at step two were harmless. *See Garcia*, 880 F.3d at 705 n.6 (noting that an error at step two is harmless if the analysis continues past this step and the final decision is based on substantial evidence).

### C. Step Three

At step three, the ALJ found that Snoe's impairments or combination of impairments did not meet or medically equal the severity of an impairment defined in the Listing. (Tr. 16.) The ALJ considered whether Snoe's vision impairments met Listings 2.02, 2.03, or 2.04, and whether Snoe's mental impairments met Listings 12.04, 12.06, or 12.15. (Tr. 16–17.)

As to Snoe's physical impairments, the ALJ found that Snoe's visual impairments did not meet the criteria of Listings 2.02 (loss of visual acuity in the better eye), 2.03 (contraction of the visual field in the better eye), or 2.04 (loss of visual efficiency in the better eye). (Tr. 16.) The ALJ reviewed eye examinations and found no evidence that the vision in Snoe's "better" eye showed the loss of visual acuity, contraction of the visual field, or loss of visual efficiency as described in Listings 2.02, 2.03, and 2.04. (Tr. 16–17, 21.) The court's independent review of the record shows that substantial evidence supports the ALJ's findings.

9

As to Snoe's mental impairments, the ALJ found that none met the criteria of Listings 12.04 (depression), 12.06 (anxiety), or 12.15 (trauma-related disorders). To meet or equal one of these Listings, the claimant must provide medical documentation of the impairment and satisfy the criteria of either "paragraph B" or "paragraph C" of the Listing. Listing 12.00(A)(2) (2017).

To satisfy the "paragraph B" criteria, the mental impairment must result in at least one extreme or two marked limitations in these areas: 1) the ability to understand, remember, or apply information; 2) the ability to interact with others; 3) the ability to concentrate, persist, or maintain pace; and 4) the ability to adapt or manage oneself. Listing 12.00(A)(2)(b) (2017). In his analysis, the ALJ found only mild limitations in Snoe's ability to adapt and to understand, remember, or apply information. (Tr. 17–18.) He found moderate limitations in Snoe's ability to interact with others and in his ability to concentrate, persist, or maintain pace. (Tr. 18.) Snoe complained that he faced limitations in each area. (Tr. 50, 198, 246.) The ALJ considered Snoe's subjective complaints of limitations but noted that they were not supported by the record. (Tr. 17–19, 194, 245, 246, 469, 548, 554.) For example, medical records described Snoe as cooperative and calm, with a linear thought process and "normal" mood. (Tr. 17–18, 469, 548, 554, 561.) In a function report, Snoe reported that he could focus on movies and games and "was good at following spoken instructions." (Tr. 18, 227–28.) The ALJ noted that some of Snoe's

10

complaints could be attributed to lifestyle choices rather than mental impairments. (Tr. 18.) Because the evidence did not support finding an "extreme" or "marked" limitation, the "paragraph B" criteria were not satisfied. (Tr. 19.)

As to the "paragraph C" criteria, the ALJ again found no supporting evidence to meet or equal the Listings. (Tr. 19.) "Paragraph C" requires at least two years of medical evidence to show that the disorder exists. Listing 12.00(A)(2)(c) (2017). It also requires evidence that treatment is needed to control the claimant's symptoms and that the claimant has "minimal capacity to adapt to changes in [their] environment" despite treatment. Listing 12.00(G)(2) (2017). Snoe testified that he moved at least three times in the nine months leading up to the hearing. (Tr. 36–37, 193, 223.) He was able to adapt and continue his lifestyle despite these environmental changes. (Tr. 18, 227.) Absent contrary evidence, Snoe has not shown that he had "minimal capacity to adapt to changes." In addition, Snoe received no continuing mental health treatment as an adult. (Tr. 22, 452, 467, 553.) Because evidence showed that Snoe had the capacity to adapt to change and that he did not need treatment to control his symptoms, substantial evidence supports the ALJ's determination that Snoe does not meet the "paragraph C" criteria.

Because the record lacked evidence of either "paragraph B" or "paragraph C" requirements, the ALJ found that Snoe's impairments did not meet the criteria of

Listings 12.04, 12.06, or 12.15. Substantial evidence supports the ALJ's findings at step three.

### D. RFC

Before turning to the final two steps of the analysis, the ALJ determined that Snoe had the following RFC:

> to perform a full range of work at all exertional levels, but the claimant has nonexertional limitations. Specifically, the claimant could only frequently work in direct sunlight. The claimant could only occasionally work in brighter than normal indoor industrial office lighting. The claimant has no useful vision in left eye, so he could only incidentally perform tasks requiring precision and depth perception. For instance, the claimant cannot perform small close work such as turning a screw, but he could stack boxes. The claimant may need to take pain and anxiety medications while at work. The claimant must avoid exposure to heights, open flames, dangerous machinery, and exposed electrical currents. The claimant is limited to frequent interactions with supervisors and co-workers and is limited to only occasional interactions with the public. The claimant is limited to low stress work settings and tasks, i.e., no forced production pace or assembly line type jobs. The claimant can adapt to changes in work methods and routines no more frequently than once every 3 weeks. Finally, the claimant may be off tasks up to 10% of the day due to anxiety and depression symptoms interfering with concentration, persistence, and pace.

(Tr. 19.) In reaching this finding, the ALJ relied on both written documentation and hearing testimony.

In formulating the RFC's physical limitations, the ALJ determined that Snoe's vision impairments warranted non-exertional limitations. (Tr. 19–23.) For instance, the ALJ determined that Snoe "could only incidentally perform tasks requiring

precision and depth perception" and should avoid hazards. (Tr. 19.) He relied on evidence that showed Snoe was legally blind in his left eye with "blurry" vision but could see well out of his right eye. (Tr. 43, 48, 476, 484, 497, 499.) State Agency physicians Dr. Brian Harper and Dr. Karen Lee both found that Snoe had limited depth perception and suggested limiting Snoe's exposure to hazards. (Tr. 23, 67–68, 80–81.) The ALJ gave great weight to these opinions because they were consistent with evidence in the record. (Tr. 23.)

The ALJ also limited Snoe's working environments because of his light sensitivity and the pain it caused him. (Tr. 19, 23, 44–46.) For example, the ALJ limited Snoe to only frequent work in direct sunlight and occasional work in "brighter than normal indoor industrial office lighting." (Tr. 19.) He noted that while Snoe complained of eye pain, headaches, and photophobia, he often participated in both indoor and outdoor activities. (Tr. 21–22, 411, 478, 528.) Snoe could ride a bike, do yardwork, play video games, and watch television. (Tr. 21–22, 194–95, 197, 225–28, 245.) Snoe also "did not complain of problems with the office lighting when he was attending the hearing." (Tr. 21.) Thus, the ALJ found that despite his complaints, Snoe could function in environments with varying exposure to light. (Tr. 21–22.)

Snoe argues that the ALJ should have provided further physical limitations due to his pain and asserts that the RFC should have recognized his "need to work

13

in darkened rooms, or with dim lights, possibly wearing sunglasses." (D.E. 16 at 9.) Snoe disagrees with the RFC but does not identify any reversible error in the ALJ's analysis. As discussed above there is ample evidence to support the ALJ's RFC determination. *See Vaught v. Astrue*, 271 F. App'x 452, 456 (5th Cir. 2008) (explaining that if an RFC is supported by substantial evidence, mere disagreement with the determination does not constitute reversible error).

Snoe argues that the ALJ erred by discounting his complaints of pain because he did not take medication that would have alleviated the pain. An ALJ may consider evidence about a claimant's failure to follow a prescribed treatment plan. *See* 20 C.F.R. § 416.930(a) (2017) (requiring a claimant to follow prescribed treatment plans to be eligible for benefits). On the other hand, treatable symptoms may be considered disabling if "the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Snoe's doctor reported that his pain could improve with medication. (Tr. 21, 499.) According to Snoe, he was not taking medication because he could not afford it. (Tr. 46, 478.) The ALJ "was not entirely persuaded" that Snoe's financial situation was the reason Snoe was not getting treatment. (Tr. 21.) The ALJ noted that Snoe had the resources to buy alcohol, tobacco, and marijuana. (Tr. 21, 49, 481, 503, 541, 554.) Treatment records also show that Snoe reported "not using the [prescribed] glaucoma drops because they burn," not because he could not afford

them. (Tr. 505.) The ALJ did not err in rejecting Snoe's financial excuse for not following his prescribed treatment program. *See, e.g.*, *Wishard v. Colvin*, No. 2:16-CV-382, 2017 WL 4570748, at *7 (S.D. Tex. Sept. 25, 2017) (finding it to be a reasonable credibility assessment to consider "a well-documented smoking habit" when the plaintiff claims they are "unable to afford prescribed medications and treatment"), *adopted by* No. 2:16-CV-382, 2017 WL 4551376 (S.D. Tex. Oct. 12, 2017).

Snoe further argues that the RFC should have included limitations on both lifting and walking based on his testimony. He alleges that Dr. Vital prohibited him from lifting more than twenty pounds because doing so caused pressure to build in his eye. (Tr. 47.) According to Snoe, the pressure triggered severe headaches. (Tr. 45.) Snoe also testified that his vision caused him to stumble while walking. (Tr. 47.) The ALJ disagreed and found that Snoe is able "to perform a full range of work at all exertional levels." (Tr. 19.) The ALJ considered Snoe's subjective complaints but determined that they were inconsistent with other record evidence. (Tr. 20–22.) For example, a record from Dr. Vital's office reported that Snoe was "clear to do all activities" and Snoe previously "revealed he could walk as far as 2 miles at a time." (Tr. 20, 22, 198, 496.) Hospital records show that Snoe walked to the facility for an examination and was "ambulatory with a steady gait" when he left. (Tr. 557, 562.) The ALJ noted that both State Agency physicians opined that Snoe

had no physical exertional limitations. (Tr. 23, 66, 79.) Both Dr. Harper and Dr. Lee opined that Snoe could handle heavy lifting. (Tr. 71, 84.) Snoe does not allege that the ALJ's analysis contains factual errors. The court's role is not to reweigh the evidence but to determine whether substantial evidence supports the ALJ's determination. *Randall*, 956 F.2d at 109. It does.

In formulating the RFC's mental limitations, the ALJ considered Snoe's hearing testimony, history of treatment, and both medical and non-medical records. The ALJ limited Snoe to frequent interactions with coworkers and occasional interactions with the public. (Tr. 19.) This limitation was based on Snoe's testimony and prior statements that he had difficulty trusting and getting along with others. (Tr. 18, 41, 50, 229.) As discussed above, the ALJ found that "medical records showed limited clinical findings of social functional limitations," which warranted "only moderate limitation in interacting with others." (Tr. 17–18, 469, 548, 554.) Substantial evidence supports this finding.

The ALJ also limited Snoe to low stress work settings with changes in work routines "no more frequently than once every 3 weeks." (Tr. 19.) He noted that Snoe "may be off tasks up to 10% of the day due to anxiety and depression symptoms interfering with concentration, persistence, and pace." *Id.* These limitations are based on Snoe's complaints that his impairments affected his concentration and his ability to handle stress and routine changes. (Tr. 18, 228–29, 548.) The ALJ noted

16

that, despite these complaints, Snoe was able to focus on activities he enjoyed and did so even in new environments as described above. (Tr. 18, 227–28.) Snoe did not seek mental health treatment as an adult and consistently denied mental-health related symptoms such as trauma, anxiety, and agitation. (Tr. 22, 452, 467–68, 553, 560.)

The only opinion evidence in the record that reports mental limitations is the affidavit of Snoe's grandmother. (Tr. 24, 594–97.) The ALJ gave this opinion little weight because it was inconsistent with objective medical evidence. (Tr. 24.) The ALJ also noted Snoe's relationship with his grandmother and her lack of medical training as reasons to give little weight to her opinion. *Id.* Based on all the evidence, the ALJ determined that some RFC limitations were appropriate. (Tr. 19–24.) Substantial evidence supports the ALJ's findings. *Cf. Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001) (affirming denial of disability despite evidence of stress and depression where evidence of the claimant's hobbies, activities, and statements made during medical treatment provided substantial evidence to support the ALJ's finding).

Snoe argues that the ALJ should have ordered a consultative examination and psychological evaluation because there was not enough evidence for the ALJ to assess Snoe's mental limitations. He argues that the ALJ had a duty to order further examinations because the records from his childhood established a history of mental

impairments. A consultative examination is required only if the record could not support a disability decision. 20 C.F.R. § 416.919a(b) (2017). If the record includes enough consistent information for the ALJ to make a disability decision, then an examination is unnecessary. *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016). The ALJ determined that a psychiatric consultative examination was unnecessary because Snoe's treatment records "did not evidence psychiatric complaints or clinically significant psychiatric findings even though he was under a doctor's care." (Tr. 12.) The ALJ relied on evidence demonstrating that Snoe exhibited a normal mood with no mental-health related symptoms. (Tr. 452, 467–69, 537, 553, 560–61.) Because the record contained sufficient evidence of Snoe's mental condition, the ALJ found no need to order a consultative examination. Snoe has not shown that the lack of a consultative examination warrants remand. *See Roberts v. Colvin*, 946 F. Supp. 2d 646, 660–61 (S.D. Tex. 2013) (finding no need for remand when substantial evidence supported the ALJ's discretionary decision and the claimant failed to show prejudice).

### E. Step Four

At step four, the ALJ found that Snoe had no past relevant work. (Tr. 24.) Snoe does not dispute this finding.

### F. Step Five

At step five, the ALJ found that Snoe could perform jobs that existed in significant numbers in both the national and local economy. (Tr. 25–26.) To support

this determination, the ALJ relied on the VE's testimony that a person with Snoe's age, education, work experience, and RFC would be able to perform work as a hospital cleaner, a laundry worker, or a shipping-receiving weigher. (Tr. 25, 53–54.) The VE testified that the need to avoid ordinary work hazards would not affect Snoe's ability to perform these occupations. (Tr. 57–59.) Pursuant to Social Security Ruling 00–4p, 2000 WL 1898704 (Dec. 4, 2000), the ALJ determined that the VE's testimony was consistent with information contained in the DOT. (Tr. 25.) The DOT is a reliable source of information of which the Commissioner may take judicial notice. *See* 20 CFR § 416.966(d)(1) (2017).

The court's review of the record confirms that substantial evidence supports the ALJ's findings at each of the five steps.

### 5. Conclusion

The ALJ's decision to deny social security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's cross-motion for summary judgment be **GRANTED**, and Plaintiff's motion for summary judgment be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of

factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on July 14, 2020.

_____
Peter Bray
United States Magistrate Judge